COMMONWEALTH *vs.* NELSON PEREZ. No. 96-P-822. January 23, 1998. *Jury and Jurors. Practice, Criminal,* Examination of jurors, Judicial discretion, Argument by prosecutor.

There was no error when the trial judge denied a defense motion for a mistrial based on a question posed by a juror, nor was there impropriety in the closing argument.

1. *Juror question about questionnaires.* Court Officer Charles Polizzotti brought to the attention of the trial judge a question from Juror No. 13 about how the juror questionnaires were used and what the possibility was of "repercussions." The trial judge carefully interviewed that juror about her concerns. The juror was troubled about possible retribution by a disappointed party and had discussed the subject with her fellow jurors. The judge explained that the information on the questionnaires, e.g., home address and occupation, was not available to the public and was available to counsel only for purposes of impaneling the jury. Thereafter, the questionnaires are collected and destroyed, except for one copy that the court retains but that copy is not available for public inspection. The judge then asked the juror: "Can you be absolutely sure that you can decide this case based on the evidence that you hear in this courtroom, being absolutely fair to the defendant and fair to the Commonwealth, and follow all of my instructions as I give them to you?" The juror responded yes.

Thereafter, the judge meticulously interviewed each of the other thirteen jurors (i.e., including two alternates), going over the juror questions and whether each of the jurors was certain that he or she could sit on the case with an open mind. Some jurors asked whether it was not possible that counsel might write down juror information. The judge candidly replied that this was, indeed, possible. On examination of the transcript of the questioning of the jurors and their answers, the reader is left with the unmistakable impression that Juror No. 13 had posed a general question, was satisfied with the judge's answer, and was quite prepared to continue to sit on the case. The other jurors displayed similar attitudes. On the basis of the record of the juror interviews, the defense speculation that the jurors' questions implied a premature disposition to find the defendant guilty is simply not supportable.

Determining whether jurors may have been prejudiced is within the sound discretion of the trial judge. *Commonwealth* v. *Samuel,* 398 Mass. 93, 96 (1986). The judge did not abuse her discretion. Cf. *Commonwealth* v. *Angiulo,* 415 Mass. 502, 520-529 (1993), discussing the constitutional difficulties attendant on an anonymous jury panel.

2. *Closing argument.* We have examined the prosecutor's closing argument which the defense attacks on appeal — there was no objection to the argument when delivered at trial — on two grounds. The first ground is that the

prosecutor mischaracterized the theory of the defense, see *Commonwealth* v. *Simmons*, 20 Mass. App. Ct. 366, 370-372 (1985), by arguing that the victim was to be believed as a credible witness with no motive to lie. The second ground is that the prosecutor improperly appealed to the emotions and sympathy of the jury by concluding his argument thus: "Ladies and gentlemen, when we first started this case, you took an oath that you were out for justice. Do justice." As there was no objection below, we review these arguments on a "substantial risk of a miscarriage of justice" standard. *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967).

The theory of the defense was misidentification by the victim witness. In closing argument, the prosecutor met that strategy by arguing that mistaken identification was unlikely on the basis of the victim's prior acquaintance with the assailant and on the basis of the assailant's height, build, exceptionally distinctive voice, familiarity with the Colortime business, knowledge of the store manager's name, a mark on his wrist, and distinctive eyes. Comment about the victim being 110% certain — so she had said — was appropriate. The additional comment that the victim had no motive to testify falsely and should be believed, was, perhaps, less than responsive to the defense's closing argument. The defense had never argued that the victim was a liar, just that she was mistaken. It is too much, however, to cast as a distortion the prosecutor's argument about why the victim ought to be credited as a witness.

As to the closing flourish about justice by the prosecutor, it was artless but without prejudicial effect. See *Commonwealth* v. *Andrade*, 422 Mass. 236, 244 n.9 (1996). This was not an instance of calling upon the jury to keep the streets safe or to be the avenging angels of the community. Compare *Commonwealth* v. *Ward*, 28 Mass. App. Ct. 292, 294 (1990).

*Judgments affirmed.*

*Eric Brandt*, Committee for Public Counsel Services, for the defendant.

*Annette C. Benedetto*, Assistant Attorney General, for the Commonwealth.